**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**


**RAYMOND L. RANDOLPH,**

     **Plaintiff,**

**vs.**                                        **Case No. 1:11cv92-MP/WCS**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

     **Defendant.**

_____/


**REPORT AND RECOMMENDATION**

     This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D).  It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

     Plaintiff, Raymond L. Randolph, applied for disability insurance benefits and supplemental security income benefits.  His last date of insured status for disability benefits was December 31, 2010.  Plaintiff alleges disability due to cervical spondylosis and a torn shoulder muscle, causing pain in his neck, shoulder, arms, hands, and lower

back, with amended onset on January 19, 2006.  R. 29, 34, 36, 38-40.  Plaintiff was 50

years of age on the alleged onset date, has a 12th grade equivalency education, and

has past relevant work as a laborer doing sheet metal work, cutting 40 pound blocks of

cheese, and as a mold setter.  R. 30-33.  The Administrative Law Judge found that

Plaintiff had the residual functional capacity to do light work with occasional limits for

overhead reaching and cannot perform his past relevant work.  Using the "grids"[1] at

step 5, the ALJ determined that Plaintiff can perform other work in the national

economy, and thus was not disabled.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles.  Chester

v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a

scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable

person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler,

703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d

1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if

supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir.

2002).[2]

---

[1] Appendix 2 to Subpart P of Part 404 – Medical-Vocational Guidelines, found at:
http://www.ssa.gov/OP_Home/cfr20/404/404-ap11.htm

[2] "If the Commissioner's decision is supported by substantial evidence we must
affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232,
1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial
deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211
(11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairments?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent other work?

_____

uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A positive finding at step one or a negative finding at step two results in disapproval of

the application for benefits. A positive finding at step three results in approval of the

application for benefits. At step four, the claimant bears the burden of establishing a

severe impairment that precludes the performance of past relevant work. If the claimant

carries this burden, the burden shifts to the Commissioner at step five to establish that

despite the claimant's impairments, the claimant is able to perform other work in the

national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050,

1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove

that he or she cannot perform the work suggested by the Commissioner. Hale v.

Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Medical evidence**[3]

On October 29, 2004, Plaintiff had a cervical MRI. R. 309. At C3-C4, there was

moderate spondylosis[4] and mild secondary canal stenosis,[5] with pronounced discogenic

sclerosis present. *Id.* There was also bilateral foraminal encroachment due to

uncinate[6] process spur. *Id.* There was also some foraminal encroachment on the right

due to uncinate process spur at C4-C5, but with normal disc morphology and canal size.

---

[3] Information about medical terms and prescription drugs come from MEDLINE PLUS
(MERRIAM-WEBSTER), found at: www.nlm.nih.gov/medlineplus/mplusdictionary.htm.

[4] Spondylosis is any of various degenerative diseases of the spine. MEDLINE PLUS
(MERRIAM-WEBSTER).

[5] Stenosis is a narrowing or constriction of the diameter of a bodily passage or
orifice. MEDLINE PLUS (MERRIAM-WEBSTER).

[6] Uncinate means bent at the tip like a hook. MEDLINE PLUS (MERRIAM-WEBSTER).

*Id.* At C6-C7, discogenic sclerosis[7] was marked. *Id.* Other than the discogenic

sclerosis, the cervical vertebral body bone marrow signal was normal and the cervical

cord was normal. *Id.* The "impression" was "advanced degenerative disc change,

pronounced discogenic sclerosis and stenosis, C3-4, with bilateral foraminal

encroachment," and prominent discogenic sclerosis at the C6-7 level. R. 310.

On March 7, 2005, Plaintiff had a neurosurgical consultation with Dr. Potts. R.

314-316. Plaintiff described a "bad toothache" pain in his neck, with numbness and

pain in his right arm. R. 314. He reported that this condition was aggravated by

tension, anger, cold weather, and keeping his neck in one position for a period of time,

and that he had improvement from pain medication, sleep, and relaxation. *Id.* He was

taking Vicodin[8] and Xanax.[9] *Id.* Dr. Potts's examination found that Plaintiff was able to

walk heel and toe without loss of balance, his sensation was normal in his upper and

lower extremities, he did not seem depressed or anxious, his gait and station were

satisfactory, he had full range of motion in his hips and knees, the straight leg raising

test was negative for pain bilaterally, his lower extremities were at full strength, with no

atrophy, he had full range of motion in his back, with no pain on 45 degree flexion,

---

[7] Sclerosis, or hardening, is a pathological condition in which a tissue has become hard and which is produced by overgrowth of fibrous tissue and other changes (as in arteriosclerosis) or by increase in interstitial tissue and other changes (as in multiple sclerosis). MEDLINE PLUS (MERRIAM-WEBSTER).

[8] Vicodin is a combination of acetaminophen (Tylenol) and the opioid pain medication hydrocodone used to treat moderate to moderately severe pain. PDRhealth™, PHYSICIANS' DESKTOP REFERENCE.

[9] Xanax is a tranquilizer used in the short-term relief of symptoms of anxiety or the treatment of anxiety disorders. Anxiety associated with depression is also responsive to Xanax. PDRhealth™, PHYSICIANS' DESKTOP REFERENCE.

extension, or lateral rotation and no muscle spasm, and his arms and shoulders had full range of motion without any pain and with full strength and stability.  R. 314-315.  The only abnormal findings were in Plaintiff's cervical spine, with tenderness with palpation over the right cervical spine, pain during neck range of motion, and dizziness on extension.  R. 315.  The range of motion results were about 50% of normal range in Plaintiff's cervical spine.  R. 317.  Plaintiff's neck, however, appeared to be stable and there was no evidence of paravertebral cervical spasms.  R. 316.  The MRI results from October 29, 2004, were noted.  *Id.*  The diagnosis was cervical spondylosis.  *Id.*  Plaintiff was referred to Dr. Ratzman for a C3-C4 facet injection.  *Id.*

On September 14, 2006, Plaintiff was examined on a consultative basis by Robert A. Greenberg, M.D.  R. 319.  Plaintiff complained of carpal tunnel syndrome, with his right hand worse than his left; arthritis in both shoulders, with pain and stiffness, making heavy lifting difficult; arthritis in the neck, with pain and stiffness; and chronic anxiety.  *Id.*  Dr. Greenberg said that he felt that Plaintiff was not putting forth a full effort with regard to strength and range of motion testing.  R. 320.  With that caveat, Dr. Greenberg found decreased range of motion in Plaintiff's cervical and lumbar spine, both hips, and both shoulders.  *Id.*  He found that Plaintiff had decreased grip strength bilaterally, at 4/5.  *Id.*  Straight leg raising testing was positive for pain at 15 degrees.  *Id.* No other motor, sensory, or reflex abnormalities were noted.  *Id.*  Dr. Greenberg said that Plaintiff's gait and station were normal and he did not need an assistive device for walking.  *Id.*  His impression was carpal tunnel syndrome, probable osteoarthritis of the shoulders, cervical and lumbar spine, and hips, and chronic anxiety disorder.  *Id.*

On March 26, 2007, Plaintiff was seen at the Family Medicine clinic of the University of Florida by Irfan Nasir, M.D.  R. 398.  Plaintiff said he had been treated with Vicodin in the past, when he was in Indiana, and he wanted a prescription of Vicodin for pain and anxiety medication.  *Id.*  He was referred to a neurosurgeon for evaluation of pain medicine.  *Id.*  Lodine[10] and Paxil[11] were prescribed.  *Id.*  Dr. Nasir said: "I have reiterated the fact that narcotic medication would not be a good idea given his symptoms, although this had been prescribed [for] him in the past."  *Id.*

On May 23, 2007, Plaintiff was told again by Dr. Nasir that narcotic pain medication would not be prescribed, and Plaintiff was quite frustrated because he was "in quite a lot of pain" and had been using Vicodin in Indiana.  R. 395.  Dr. Nasir thought that Plaintiff might be experiencing neuropathy from hepatitis C.  *Id.*

On June 25, 2007, Plaintiff was again told by Dr. Nasir that narcotic pain medication was not an appropriate treatment.  R. 393.

On December 21, 2007, Plaintiff was seen again at Shands Family Medicine by Run Gan, M.D.  R. 388.  Dr. Gan reported that Plaintiff had earlier been referred to a pain management clinic but was not accepted due to lack of insurance.  *Id.*  He noted that a repeat MRI "did not show any core compression," and a CT showed "moderate spondylosis."  *Id.*  A neurosurgical evaluation reported that surgical intervention was not needed, that pain management was prescribed instead.  *Id.*  A pain management

---

[10] Lodine is the brand name for etodolac, a nonsteroidal anti-inflammatory medication.  DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS.

[11] Paxil relieves a variety of emotional problems.  It can be prescribed for serious, continuing depression that interferes with one's ability to function.  PDRhealth™, PHYSICIANS' DESKTOP REFERENCE.

contract was signed with Plaintiff.  *Id.*  Apparently at some time in the intervening

months, Vicodin had been prescribed.  *Id.*  Plaintiff reported that with Vicodin, his pain

level was two on a scale of 10, and was tolerable.  *Id.*  A spinal examination revealed no

cervical tenderness, though there was some tightness of the paraspinous muscles

around the neck and right lower back.  *Id.*  Plaintiff's strength in his upper and lower

extremities was undiminished.  *Id.*

       Plaintiff was continued on Vicodin on January 18, 2008.  R. 387.  He again said

that this helped him tolerate his pain.  *Id.*  He had no cervical tenderness and his was

undiminished in his upper and lower extremities.  *Id.*

       On February 18, 2008, Plaintiff continued to report that Vicodin was helping with

his pain.  R. 386.  His strength in both upper and lower extremities remained

undiminished.  *Id.*

       On March 17, 2008, Plaintiff continued to report that Vicodin was working and he

was not abusing it.  R. 385.  His strength was still undiminished.  *Id.*

       On April 14, 2008, Vicodin was continued.  R. 384.  Plaintiff was still working out

the "details" with a pain management clinic.  *Id.*  Vicodin was still helping with the pain.

*Id.*  Plaintiff continued to report that the pain was in his cervical spine and did not radiate

his hands.  *Id.*  His neck motion was "slightly restricted on looking up and side-to-side."

*Id.*  His upper and lower extremity strength was intact (5/5).

       On May 12, 2008, Plaintiff reported that with Vicodin, his cervical pain was four

on a scale of 10.  R. 383.  He had been rejected by the pain management clinic

because they did not accept his insurance.  *Id.*  He had no pain on palpation of his

spine, and his strength was undiminished in both extremities.  *Id.*  A referral was made to a different pain management clinic.  *Id.*

On June 9, 2008, imaging of Plaintiff's cervical spine revealed normal vertebral body height and alignment, but extensive degenerative spondylosis at C3-C4 and C6-C7.  R. 372.

On June 10, 2012, it was reported that Plaintiff had finally been accepted by a pain management clinic, under the care of Dr. Atchison.  R. 382.  Dr. Atchison planned to administer a steroid injection to the neck.  *Id.*  Plaintiff denied any weakness in his upper extremities, and his strength was intact (5/5).  *Id.*  Again, he had no pain on spinal palpation.  *Id.*

On July 14, 2008, Plaintiff saw Dr. Jorge C. Konopka at the Shands Family Medicine clinic and requested a letter stating that he was no longer able to work.  R. 380.  He was given "specific instructions to get in touch with" Dr. Atchison "to get the proper paperwork" for that request.  *Id.*  Dr. Konopka said:  "At this point we were very specific that we need proper criteria to issue that type of permanent work extension."  *Id*  Dr. Konopka noted only "slight progression of narrowing with minimal degenerative changes" at C6-C7, with no apparent compression.  *Id.*  Plaintiff had an appointment with an orthopedic spine clinic on July 27, 2008.  *Id.*

On September 4, 2008, Plaintiff returned to the Shands Family Medicine clinic and was seen by Derek J. Eichler, M.D.  R. 379.  Plaintiff was walking with a cane and wore bilateral wrist braces.  *Id.*

**Legal analysis**

> **Whether the ALJ erred at step 2 by failing to find Plaintiff's chronic pain to be a "severe" impairment**

Plaintiff contends that "chronic pain" is an impairment that should have been found to be "severe" at step 2.  Doc. 14, p. 18.  Defendant argues that pain is a symptom, not an impairment.  Doc. 17, citing 20 C.F.R. §§ 404.1569a(a) and 416.969a(a).

There are some cases that seem to treat chronic pain or chronic pain syndrome as a mental impairment.  Mills v. Astrue, 396 Fed.Appx. 621 (11th Cir. Sep 17, 2010) (not selected for publication in the Federal Reporter, No. 09-14418); Simila v. Astrue, 573 F.3d 503, 521 (7th Cir. 2009).  Traditionally, however, chronic pain is a symptom arising from a medical condition, Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002), and is evaluated as a non-exertional limitation upon residual functional capacity. Phillips v. Barnhart, 357 F.3d 1232, 1242, n. 11 (11th Cir. 2004).

It is unnecessary, however, to determine whether the ALJ erred in not finding Plaintiff's chronic pain to be a "severe" impairment at step 2.  So long as the ALJ fully considered the evidence of Plaintiff's pain at steps 3, 4, and 5, any error at step 2 is harmless.  Delia v. Commissioner of Social Sec., 433 Fed.Appx. 885, 887 (11th Cir. Jul 14, 2011) (not selected for publication in the Federal Reporter, No. 10-15092) (citing Reeves v. Heckler, 734 F.2d 519, 524 (11th Cir. 1984)).

**Whether the ALJ failed to consider Plaintiff's impairments, including chronic pain, in combination**

Plaintiff contends that since the ALJ did not find that his chronic pain was a "severe" impairment at step 2, the ALJ failed to consider the effects of chronic pain in combination with other impairments at steps 3, 4, and 5.[12]

The ALJ fully considered Plaintiff's allegations of pain at every step.  He first accurately described the medical evidence, Plaintiff's treatment history, and all of Plaintiff's assertions of pain as reflected in the medical record and at the administrative hearing.  R. 20-23.  The ALJ determined that Plaintiff's complaints of disabling pain were not credible.[13]  R. 23.  In discounting Plaintiff's subjective assertions of pain, the ALJ observed that clinical findings were minimal.  R. 23.  He noted that all examinations of Plaintiff showed that he had normal gait, normal muscle strength, and full range of motion except in his cervical spine.  *Id*.  The ALJ further found:

> His cane is not prescribed and there is no reason he would need this assistive device as he has a normal gait and no abnormalities with his lumbar spine or his lower extremities.  His medications help with no side effects.

*Id*.  The ALJ determined that while Plaintiff's cervical spondylosis "would cause some pain," Vicodin "provided tolerable pain relief."  R. 24.  He noted:

---

[12]   All impairments, whether "severe" or not, must be evaluated in combination at all stages of the analysis.  20 C.F.R. §§ 404.1523 and 416.923; Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990); Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993); Hudson v. Heckler, 755 F.2d 781, 785 and n. 2 (11th Cir. 1985).

[13] The reasons articulated by the ALJ for disregarding the claimant's subjective testimony must be based upon substantial evidence.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

> The only abnormal finding is some decrease[d] range of motion and at times tightness and tenderness.  The claimant has no muscle spasms in his entire spine.  He has 5/5 strength throughout his extremities.  The claimant suffers from no other impairments that would cause any limitations.  He does have hypertension and diabetes which do not show any severe complaints in regards to these [diagnoses] or any limitations by these impairments.

*Id.*

These findings are supported by substantial evidence in the record discussed above and are, standing alone, sufficient to discount Plaintiff's subjective pain testimony.  The report of April 14, 2008, is a good example of the lack of clinical findings.  On that day, Plaintiff said he had pain centered in the cervical spine, but the pain did not radiate into his hands.  R. 384.  The physician found that Plaintiff's neck motion was "slightly restricted," but he still had full strength in his arms and shoulders. *Id*.  The record also shows that examining physicians found no impairment in Plaintiff's lower spine, normal gait, full muscle strength in both lower and upper extremities (both arms and shoulders), and somewhat limited range of motion of the upper cervical spine, but with no tenderness upon palpation of the cervical spine.  It was repeatedly reported that Vicodin enabled Plaintiff to tolerate the cervical pain, with pain at two or four on a scale of 10, with no reported side effects.  While Plaintiff had moderate spondylosis of the cervical spine, there was no apparent cord compression and surgical intervention was not recommended.

In addition, though evidence of daily activities is often not dispositive standing alone,[14] the ALJ relied upon evidence of Plaintiff's daily activities to discount his reports

---

[14] Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing,

of disabling pain.  R. 23.  The ALJ found that Plaintiff said he could cook, clean, drive,

and "even mow the grass."  *Id.*  Though Plaintiff testified that his daily activities are quite

limited, Plaintiff did report that he could cook simple meals, do a little house cleaning,

work in the yard one hour a week, drive a motor vehicle, and visit the store, church, and

post office.  R. 146-149.  The majority of the problems described by Plaintiff with regard

to his own personal care related to moderate restriction of movement of his arms and

shoulders:  his shoulders hurt when he puts on a shirt or his reaches behind him, he

cannot reach certain spots to bathe, it is painful to reach overhead, and it hurts to hold

his head back to shave.  R. 145.  These are not restrictions for sitting or occasionally

lifting and carrying, and required for light work.

        In summary, the ALJ gave sufficient reasons to support his conclusions about the

severity of Plaintiff's experience of pain.  He then adequately considered Plaintiff's pain

in connection with other impairments, finding that Plaintiff's hypertension and diabetes

do not cause any sort of limitations.

        The ALJ then determined that Plaintiff's cervical and shoulder pain causes

occasional limitations for overhead reaching, and that he was limited to light work.  R.

19-20.  This adequately addressed the functional limitations caused by the pain, and the

residual functional capacity assessment is supported by substantial evidence in the

record.  It is noteworthy here that one of Plaintiff's physicians gave him forms to have

Dr. Atchison complete to assess his residual functional capacity, but is no evidence of

any opinion by any treating physician on Plaintiff's residual functional capacity.

---

disqualifies a claimant from disability or is inconsistent with the limitations recommended
by Lewis's treating physicians.").

**Whether the ALJ erred by relying upon the "grids" instead of vocational testimony**

"The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004).  "[E]xclusive reliance on the grids is not appropriate either when [a] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."  Id., quoting Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985).

The Commissioner's rules define "light work" in part:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).  An occasional limitation to avoid overhead reaching is not a significant limitation of basic work skills.  Luther v. Astrue, 2010 WL 3504754, *10 (E.D. Cal. Sep 03, 2010) (No. 2:08-CV-02993); Courser v. Astrue, 2012 WL 195519,*9 (D. Or. Jan 23, 2012) (No. 3:11-CV-717-MA) (limitation to occasional reaching overhead did not significantly limit a range of light work).  Consequently, it was not error for the ALJ to have relied upon the "grids" instead of vocational testimony.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge were based upon substantial evidence in the record and correctly followed the law.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED** and the Clerk be directed to enter judgment for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on February 28, 2012.


s/     William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**